UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ISLAND ROOFING AND RESTORATION
LLC, a/a/o Enclave at Naples Condominium
Association, Inc.,

       Plaintiff,

v.                                                                                    Case No:  2:21-cv-211-JLB-KCD

EMPIRE INDEMNITY INSURANCE
COMPANY,

       Defendant.

_____

## ORDER

Island Roofing and Restoration LLC ("Island Roofing"), as the assignee of the

Enclave at Naples Condominium Association, Inc. ("Enclave"), sues Empire

Indemnity Insurance Company ("Empire") for breach of an insurance policy based

on Empire not paying an appraisal award.   Invoking the Court's diversity

jurisdiction, the parties have filed cross-motions for summary judgment.   (Docs. 30,

37.)   Island Roofing asks that the Court confirm the appraisal award.   Empire

maintains it has satisfied its contractual obligation because it has already paid

Island Roofing more than the amount that was actually spent to repair the insured

property.   Alternatively, Empire seeks additional discovery into the appraisal

panel's determination so that it can challenge purported procedural discrepancies

with the award.   Island Roofing, in response to that discovery request, moves for a

protective order that largely reasserts the arguments in its summary judgment

motion.   (Doc. 31.)

This dispute turns on Empire's payment obligations under the policy.   And the plain language of the policy states that Empire is liable for no more than the necessary amount Island Roofing spent in repairing the property.   As will be explained, Island Roofing's motion for summary judgment (Doc. 30) is **GRANTED IN PART**, Empire's motion for summary judgment (Doc. 37) is **DENIED WITHOUT PREJUDICE**, and Island Roofing's request for a protective order (Doc. 31) is **GRANTED IN PART**.

## BACKGROUND

A review of the parties' respective Statements of Undisputed Facts reveals little, if any, disagreement as to the factual background of this case.   (Compare Doc. 30 at 2–5, with Doc. 37 at 2–4.)[1]   The Enclave is a condominium association that insured its buildings through a commercial lines policy with Empire.   (Doc. 16-1.)   After Hurricane Irma allegedly damaged the insured property, the Enclave submitted a claim for its loss to Empire.   (Doc. 37-1 at ¶ 6.)   Between July and October 2018, Empire conceded at least partial coverage for the loss and made three separate payments on the Enclave's claim.   (Id.)   Then, in November 2018, the Enclave hired Island Roofing to repair the insured property and assigned its rights and benefits, along with any proceeds under the policy, to Island Roofing ("Assignment").   (Doc. 16-2.)

---

[1] Despite neither expressly admitting nor denying the other's assertions, the parties' statements largely overlap in every material and substantive way. Accordingly, the Court will summarize those facts while viewing the same "in the light most favorable to the non-moving party on each [cross-]motion."   Chavez v. Mercantil Commercebank, N.A., 701 F.3d 896, 899 (11th Cir. 2012).

Specifically, the Enclave assigned Island Roofing "any and all insurance rights, benefits, and proceeds" under the policy relating to its claim.   (Id. at 1.)   In exchange, Island Roofing agreed "to perform a replacement of the roof and other repairs on the property."   (Id.)   Island Roofing and the Enclave estimated the cost of repairs in the Assignment at $6,853,187.60.   (Id. at 3.)   But they also agreed that the Enclave "shall be responsible for only the insurance deductible in the amount of $2,500,000 . . . and no other amounts in any circumstances."   (Id. at 1.) Empire subsequently "confirmed the assignment" and began adjusting the claim with Island Roofing.   (Doc. 30-2 at ¶ 3; Doc. 37-1 at ¶ 7.)

Empire requested a proof of loss from Island Roofing who, in turn, provided an estimate for the full cost of repair or replacement at $10,382,724.64.   (Doc. 37-1 at 3, 170.)   But in the permit applications for the repair work that Island Roofing submitted to the local government around the same time, it provided an estimate of $6,595,386.   (See Doc. 37-2.)   In any event, between February and May 2019, Empire made three additional payments for "roof repairs" and "Enclave Hurricane Repairs."   (Doc. 30-2 at 12, 19, 22.)   All in all, Empire paid $3,552,199.60 in adjusting the claim.   (Doc. 37-1 at ¶ 13.)

Not shockingly, the parties still disagreed over the amount of loss.   (Doc. 30-2 at ¶ 7; Doc. 37-1 at ¶ 14.)   So, in August 2019, Empire invoked the policy's Appraisal provision:

> 2.    Appraisal
>
> If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss.   In this event, each party will select

> a competent and impartial appraiser.   The two appraisers will select an umpire.   If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction.   The appraisers will state separately the value of the property and amount of loss.   If they fail to agree, they will submit their differences to the umpire.   A decision agreed to by any two will be binding.
>
> . . . .
>
> If there is an appraisal, we will still retain our right to deny the claim.

(Doc. 16-1 at 37 (emphasis added); Doc. 30-2 at 25.)   The parties convened an appraisal panel, where Island Roofing submitted a repair estimate of $6.4 million. (Doc. 37-1 at 4, 25, 169.)

The appraisal panel issued its award in August 2020.   (Doc. 16-3.) Specifically, the appraisal award valued the amount of loss for both the Actual Cash Value ("ACV") and Replacement Cost Value ("RCV") at $10,761.515.65, "less any prior payments."   (Id. at 1.)   A detailed, line-item valuation accompanied the award.   (Id. at 3.)   The appraisal panel certified that it "investigated and conscientiously considered all the material facts while performing the duties within [their] appointment pursuant to the appraisal clause of the subject policy."   (Id. at 1.)   They also clarified that "[t]his award does not include nor does this award account for or deduct the insured's deductible and/or any prior or advance payments that were made to the insured."   (Id.)   "Additionally, this award does not consider any limitations or exclusions which may or may not exist under the terms of the contract of insurance."   (Id. (emphasis added).)   Under the policy, if Island Roofing has "complied with all the terms of [applicable coverage]," Empire "will pay for

covered loss or damage" within thirty days of receiving "the sworn proof of loss" and

"[t]here is a filing of an appraisal award with [it]."   (Doc. 16-1 at 76.)

Empire made no further payments though.   (Doc. 37-3.)   In September 2020,

Empire acknowledged the appraisal award but maintained that "it does not owe any

more than it has paid so far on this claim" and "likely has paid more than it owes

under the policy['s]" Replacement Cost coverage provision.   (Id. at 1.)   The

Replacement Cost coverage provision limits Empire's obligation to pay benefits on

the claim as follows:

> 3. Replacement Cost
>
> a. Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Loss Condition, Valuation, of this Coverage Form.
>
> . . . .
>
> d. We will not pay on a replacement cost basis for any loss or damage:
>    (1) Until the lost or damaged property is actually repaired or replaced; and
>    (2) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.
>
> e. We will not pay more for loss or damage on a replacement cost basis than
>
> . . . .
>
>    (3) The amount actually spent that is necessary to repair or replace the lost or damaged property.

(Doc. 16-1 at 42 (emphasis added).)   Empire invoked this provision because

"[r]epairs have been performed at the property."   (Doc. 37-3 at 1.)

Empire reasoned that it had "paid more than 'the amount actually spent that is necessary to repair or replace the lost or damaged property'" because, "regardless of any assignment," the Enclave "has spent only $2,225,303.25 on repairs and will never owe Island Roofing more than $2.5 million." (Id. at 2; see also Doc. 37-1 at 172.) Put differently, no matter what Island Roofing spent on repairs, Empire construed the "amount actually spent" as only what the Enclave agreed to pay Island Roofing (which would never exceed $2.5 million per the Assignment). (See Doc. 37-3 at 2.) And because "Empire has paid $3,552,199.60 on the claim so far," it posited that it "does not and will not owe anything more for Replacement Cost coverage." (Id.) Last, Empire informed Island Roofing that it was investigating the discrepancy between the Assignment, Island Roofing's proof of loss, the permit application, and the estimate submitted to the appraisal panel—all of which reflected different repair costs. (Id.)

Thereafter, Island Roofing filed its Amended Petition for Declaratory Judgment & Breach of Contract in this Court. (Doc. 16.) In Count I, Island Roofing seeks a declaratory judgment that "the amount actually spent": (a) is not limited to the Enclave paying the policy's deductible but also includes Island Roofing's expenditures as assignee; and (b) "is to be made in accordance with the Policy's Appraisal provision." (Id. at 14–15.) In Count II, it requests a declaration that, under the policy's Appraisal provision, "Empire [is] not afforded the right to withhold payment because it believes the Appraisal Award should be 'millions less.'" (Id. at 17.) In Count III, Island Roofing contends that Empire breached the policy

by not paying "all that is due and owing under the policy" after receiving a proof of loss and the appraisal award.   (Id. at 19.)

Empire counters with eight affirmative defenses.   (Doc. 18.)   First, it claims that Counts II and III are duplicative, but the Court rejected this when it denied Empire's motion to dismiss based on the same argument.   (Id. at 8; Docs. 17, 49.) Second, it argues the policy's Replacement Cost coverage provision precludes recovery because "the Enclave has neither paid more than the deductible for completed repairs nor presented evidence that repairs were performed 'as soon as reasonably possible after the loss.'"   (Doc. 18 at 8 (quoting Doc. 16-1 at 42).)   Third, Empire argues that the Enclave "has neither 'actually spent' the amount of money" that Island Roofing claims "nor presented . . . evidence of such expense."   (Id. at 9 (quoting Doc. 16-1 at 42).)   Fourth, it asserts that the Enclave (through Island Roofing) breached the policy by submitting allegedly inflated repair estimates and "precluding the appraisers from relying on the value reflected in the Plaintiff's permit documentation or any evidence of money actually spent on repairs."   (Id.) In its fifth affirmative defense, Empire asserts that the appraisal award is not enforceable because "the amount of loss calculated includes items not covered under the Policy" and thus Empire "has not breached the Policy, but has merely exercised its right to deny the aspects of a claim not covered despite the issuance of an appraisal award."   (Id. at 10.)

Sixth, it asserts that the award is invalid because the appraisers mistakenly relied on "inflated pricing and unsupported estimates," failed to consider "the actual

cost of the actual repair," and erroneously calculated an amount of loss that "results in a windfall [for Island Roofing] if it is enforced."   (Id. at 11.)   Seventh, Empire alleges Island Roofing acted with unclean hands in failing to "provide reasonably prompt, accurate and complete information . . . concerning the money actually spent in conducting repairs, and by inflating the prices upon which its repair estimates relied."   (Id. at 11–12.)   Finally, as its eighth affirmative defense, Empire contends that "the appraisal panel calculated only the value of estimated repair costs and the [appraisal award] is enforceable, if at all, only as to those costs."   (Id. at 12.)

Island Roofing has now filed a Motion to Confirm the Appraisal Award & Entry of Summary Judgment based on Empire's refusal "to issue payment for the remaining amount of loss [in the appraisal award] in breach of the Policy."   (Doc. 30 at 6.)   Though its motion and associated filings address a host of ancillary issues, Island Roofing relies on two main arguments in support of its position. (Docs. 42, 43.)   First, it maintains that the policy "does not restrict payment to the amount only spent by the Enclave."   (Doc. 42 at 11.)   Second, it claims that the appraisal award is the appropriate measure of Island Roofing's damages for Empire's alleged breach of the policy.   (See id. at 8, 10–14.)

Empire has responded to Island Roofing's motion and (in the same filing) cross-moves for summary judgment on its third affirmative defense—that the "amount actually spent" for repairs under the policy is limited to the Enclave's financial liability under the Assignment.   (Doc. 37 at 20.)   Again, to clarify the dispositive issue before the Court (see Doc. 48), Empire's pertinent argument is that

the appraisal award is not synonymous with Island Roofing's damages

determination.   (Doc. 37 at 10.)   Specifically, Empire first argues that the policy's

Replacement Cost coverage provision limits the amount it is obligated to pay on the

claim.   (Id. at 7–8.)   Then, it asserts that its obligation under that provision is

tethered to what the Enclave agreed to pay Island Roofing for repairs under the

Assignment, not what Island Roofing spent on repairs.   (Id. at 8–9.)   The rest of

Empire's arguments focus on alleged improprieties over Island Roofing's and the

appraisal panel's conduct in valuing the claim and issuing an appraisal award.   For

example, Empire asserts that the appraisal panel failed to consider evidence of

lower repair estimates and erred in its calculations.   (See id. at 11–13.)

To tie up the facts and procedural history, Island Roofing requests a

protective order directed at propounded discovery related to these contentions.

(See Doc. 31.)   As the Court will explain, Empire is not entitled to such discovery.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law."   Fed. R. Civ. P. 56(a).   The moving party bears the initial burden of

showing the absence of a genuine dispute and may discharge this burden by

"pointing out to the district court . . . that there is an absence of evidence to support

the nonmoving party's case."   Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

The nonmoving party must then come forward with specific facts "to establish the

existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial." Id. at 322. "In other words, summary judgment is warranted if a jury, viewing all facts and any reasonable inferences therefrom in the light most favorable to plaintiffs, could not reasonably return a verdict in plaintiffs' favor." Hale v. Tallapoosa Cnty., 50 F.3d 1579, 1581 (11th Cir. 1995) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

## DISCUSSION

As a threshold issue, the Court must determine the grounds Empire may challenge the appraisal award. Because this Court sits in diversity, it must apply Florida law. Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). "[W]here a contract is clear and unambiguous, it must be enforced as written." Andersen Windows, Inc. v. Hochberg, 997 So. 2d 1212, 1214 (Fla. 3d DCA 2008). And Florida courts "may not rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties." Intervest Const. of Jax, Inc. v. Gen. Fid. Ins. Co., 133 So. 3d 494, 497 (Fla. 2014) (quotation omitted). It is well established in Florida that insurers are bound to pay an appraisal award unless they are able to "avoid[] [it] in some legally recognized way." Hanover Fire Ins. Co. v. Lewis, 10 So. 297, 303 (Fla. 1891).

For example, an insurer may challenge an appraisal award by asserting "any coverage defenses which may be available to it." State Farm Fire & Cas. Co. v. Licea, 685 So. 2d 1285, 1287 (Fla. 1996). After all, only "[i]f a court decides that coverage exists" for a claim under a policy will "the dollar value agreed upon under the appraisal process . . . be binding upon both parties." Id. at 1287–88 (emphasis

added).   Yet "[w]hile issues concerning coverage challenges are exclusively for the courts, where an insurer admits there is a covered loss and there is a disagreement regarding the amount of the loss, the appraisers are charged with determining the loss."   First Protective Ins. Co. v. Hess, 81 So. 3d 482, 485 (Fla. 1st DCA 2011). "The division of responsibility between the appraisers and court is therefore clear. The appraisers determine the amount of the loss, which includes calculating the cost of repair or replacement of property damaged, and ascertaining how much of the damage was caused by a covered peril."   Citizens Prop. Ins. Corp. v. River Manor Condo. Ass'n, Inc., 125 So. 3d 846, 854 (Fla. 4th DCA 2013).   "Appraisers generally are chosen for and expected to act on their own skill and knowledge relating to the matters being appraised."   Citizens Prop. Ins. Corp. v. Mango Hill #6 Condo. Ass'n, Inc., 117 So. 3d 1226, 1229 (Fla. 3d DCA 2013).   "There is no obligation for appraisers to give formal notice of their activities to the parties or counsel, or to hear evidence."   Id.

The Appraisal provision here states that "[i]f there is an appraisal," Empire "still retain[s] [its] right to deny the claim."   (Doc. 16-1 at 37.)   "The purpose of [this] 'right to deny' sentence is to state, quite simply, that if . . . the insurer proceeds with the appraisal process, the insurer has not thereby abandoned any coverage defenses which may be available to it."   Licea, 685 So. 2d at 1287 (quotation omitted).

That said, the policy unambiguously states that "[a] decision [on the value of the property or the amount of loss] agreed to by any two [appraisers] will be

binding" on the parties.   (Doc. 16-1 at 37.)   By its own terms, Empire may not seek

to alter the value of the property or amount of loss determined by the appraisal

panel.   To the extent that Empire's affirmative defenses or discovery requests

target alleged mistakes with the appraisal panel's rational, the unambiguous

language of the policy means that it must fail.   See River Manor, 125 So. 3d at 854

("An alleged mistake of that nature raises an issue directly related to the 'amount of

loss' sustained to the particular property—an issue solely within the province of the

appraisers.")[2]

It is also undisputed that Island Roofing may recover, at most, "the amount

actually spent that is necessary to repair or replace the lost or damaged property."

(Doc. 37 at 7; Doc. 42 at 8–9 (quotation omitted).)   Still, Empire argues that "the

amount actually spent" is only what the Enclave agreed to pay Island Roofing under

the Assignment, which is an amount only up to the policy's deductible.   But if an

assignment is valid, the assignee "stands in [the] shoes" of the assignor and "has the

same rights and status" that the assignor did.   Pro. Consulting Servs., Inc. v.

Hartford Life & Accident Ins. Co., 849 So. 2d 446, 447 (Fla. 2d DCA 2003) (citing

Foster v. Foster, 703 So. 2d 1107, 1109 (Fla. 2d DCA 1997)).   And, as this Court has

explained, this includes "all rights attendant to work performed (or to be

---

[2] Because the Court resolves this issue on separate grounds, it declines to
address Island Roofing's argument that Empire is time-barred from seeking to
modify or vacate the appraisal award under Florida's Arbitration Code.   (Doc. 30 at
7–8 (citing Fla. Stat. § 682.13(2)).)   Regardless of the Arbitration Code's
applicability, Empire may still raise defenses of coverage against the appraisal
award and Island Roofing must demonstrate that its requested relief comports with
the policy's terms.

performed)."   SFR Servs. LLC v. GeoVera Specialty Ins. Co., No. 2:19-CV-466-JLB-MRM, 2021 WL 1909669, at *4 (M.D. Fla. May 12, 2021) (citing Florida cases).

Oddly enough, Empire never explains why the appropriate focus is on what the Enclave spent when the Enclave assigned "any and all insurance rights, benefits, and proceeds" under the policy to Island Roofing.   (Doc. 16-2 at 1 (emphasis added).)   Because the Enclave transferred to Island Roofing all rights and benefits associated with its claim, nothing precludes Island Roofing from recovering the amount it spent on repairing covered losses.   Nor does Empire identify any policy provision that requires the Enclave, especially after an assignment of its rights and entitlement to proceeds under the policy, to make the repairs or replace the insured property.   (See Doc. 16-1 at 42.)   Thus, to the extent Empire argues it is only liable for what the Enclave actually spent in repairing the property, that argument fails.[3]

---

[3] Nor would Empire's seventh defense of unclean hands prevent this conclusion.   That doctrine applies to equitable actions against "one who has acted in bad faith, resorted to trickery and deception, or been guilty of fraud, injustice or unfairness."   In re Kingsley, 518 F.3d 874, 878 (11th Cir. 2008).   But suits for declaratory judgment "are neither inherently legal nor equitable in nature."   Gulf Life Ins. Co. v. Arnold, 809 F.2d 1520, 1523 (11th Cir. 1987) (quotation omitted). "When determining whether a declaratory judgment action is legal or equitable, courts have examined the basic nature of the issues involved to determine how they would have arisen had Congress not enacted the Declaratory Judgment Act."   Id. Since Island Roofing is seeking an interpretation of its rights and Empire's obligations under the policy to pursue money damages (i.e., recover the appraisal award or a portion thereof), the Court finds that the dispute is akin to a breach of contract claim for damages and thus the defense is inapplicable.   Put differently, Island Roofing "does not seek equitable relief (instead, it seeks money damages on its breach of contract claims).   Accordingly, the defense is inapplicable."   Wausau Underwriters Ins. Co. v. Horizon Staffing, LLC, No. 11-21950-CV, 2012 WL 13012741, at *7 (S.D. Fla. Oct. 12, 2012).

Still, Island Roofing must demonstrate that it is entitled to the entire appraisal amount before the Court confirms the same.   The term "'[a]ppraisal award' is really a misnomer because the appraisal panel only determines the amount of loss, not an insured's entitlement to any damages."   Mango Hill, 117 So. 3d at 1227 n.1 (emphasis added).   Indeed, "courts have recognized that an appraisal award does not establish the amounts owed under the policy where (as here) the award includes language stating that it was made without consideration of the deductible amount, prior payments, or policy exclusions."   Ford v. Am. Sec. Ins. Co.s2019 WL 6609239, at *2 (S.D. Fla. Dec. 5, 2019) (emphasis added).   Simply put, an "appraisal award [is] not a damages determination."   People's Tr. Ins. Co. v. Espana, 320 So. 3d 940, 944 n.4 (Fla. 3d DCA 2021) (citing Mango Hill, 117 So. 3d at 1227 n.1.)

Keeping with the above, Island Roofing concedes that "the award may be reduced to reflect prior payments, the deductible or exclusions – that is not in dispute."   (Doc. 42 at 8 (emphasis added).)   And the Replacement Cost coverage provision limiting Empire's payment on the claim to the "amount actually spent" in repairing the property constitutes just such a reduction.   Sands on the Ocean Condo. Ass'n, Inc. v. QBE Ins. Corp., No. 05-14362-CIV, 2009 WL 790120, at *2 (S.D. Fla. Mar. 24, 2009) ("[T]he award reflects the agreement of the appraisers as to the amount owed to [p]laintiff based on the evidence of property damage before them.   It does not reflect the amount owed to [p]laintiff under the policy.").   Island Roofing nevertheless asserts that the appraisal award is coextensive with the

damages it seeks because "the determination as to the amount spent by . . . Island Roofing is a determination for the appraisal panel." (Doc. 42 at 12–13). Empire counters that "Island Roofing has failed to present any evidence of any amount actually spent by anyone. Instead, it relies on the appraisal award, as if that were evidence of actual expenditures." (Doc. 48 at 8 (emphasis omitted).) The Court agrees with Empire. Island Roofing is not entitled to confirmation of the appraisal award at this juncture because it has not met its burden in showing that the award is the amount it actually and necessarily spent in repairing the property.

Island Roofing cites Marlowe v. Ironshore Specialty Insurance Co., No. 2:18-cv-245-FtM-38MRM, 2020 WL 736628, at *1 (M.D. Fla. Jan. 29, 2020), adopted, 2020 WL 736000 (M.D. Fla. Feb. 13, 2020), in arguing that the appraisal award is now functionally what it "spent to make the repairs" and that "this Court is without authority to look beyond the face of the Appraisal Award, even if that means the amounts actually spent might not be resolved." (Doc. 42 at 13.) Yet Marlowe only held that the appraisal panel "had the full authority to . . . determine . . . the sum necessarily incurred as a result of the loss." Marlowe, 2020 WL 736628, at *5 (emphasis added). In other words, the appraisal panel had the authority to determine an RCV for the loss.

The focus here, however, is not whether the appraisal panel could determine an RCV for Island Roofing's claim, but whether that RCV determination is what Empire owes on the claim given the policy's Replacement Cost coverage provision.

Thus, the appraisal award creates a ceiling for the "amount . . . that is <u>necessary</u> to repair or replace" the insured property.    (Doc. 16-1 at 42 (emphasis added).)

Consider a scenario in which Island Roofing spends $5 million to repair the property.    Given the policy's Replacement Cost coverage provision, it defies both logic and the plain terms of the policy (nor does Island Roofing cite authority to the contrary) to award it the full $10 million appraisal award which only estimates the RCV of necessary repairs.    Alternatively, assume Island Roofing—perhaps through selecting premium materials and hiring the most skilled contractors—spends $20 million in repairing the property.    Then, Island Roofing would be unable to recover more than the appraisal award because the appraisal panel determined that the necessary amount to repair the property is only $10 million.    The appraisal award is binding in either scenario, but the Replacement Cost coverage provision ultimately determines what Island Roofing may claim as damages under the policy.[4]

At bottom, the parties have not shown the absence of a genuine dispute over Island Roofing's damages and Empire's obligations under the Replacement Cost coverage provision.    Island Roofing must demonstrate that the amount it seeks to recover (<u>e.g.</u>, the entire appraisal award) comports with the policy's coverage

---

[4] For this reason, Island Roofing's reliance on <u>First Protective Insurance Co. v. Hess</u> is also misplaced.    81 So. 3d 482 (Fla. 1st DCA 2011).    <u>Hess</u> refused to allow a trial court "to discern the <u>value</u> of each individual item to which [a policy's] limitations could be applied," not whether the insured was liable for the appraisal award's entire amount of loss as issued despite a relevant policy limitation.    <u>Id.</u> at 485 (emphasis added).

provision and any relevant exclusions.   And Empire must show that the amount already paid is what Island Roofing actually spent on repairs or the absence of a genuine dispute on this point.   On this record, summary judgment in favor of either party—absent the limited findings stated in this Order—is inappropriate at this juncture.   Beyond the principles outlined above, the motions are therefore denied without prejudice for both parties to refile after the conclusion of discovery.

## CONCLUSION

For the above reasons, Island Roofing is entitled to summary judgment on Counts I and II of its Amended Petition to the extent the Court finds that: (1) the "amount actually spent," as contemplated by the policy's Replacement Cost coverage provision encompasses what Island Roofing actually spent in repairing the insured property; and (2) Empire may not have this Court substitute its judgment for the appraisal panel's calculations and considerations in determining the value of property or the amount of loss.   Furthermore, Empire may not obtain discovery solely focusing on appraisal panel issues over valuation or amount of loss determinations.

Because Island Roofing has "fail[ed] to describe the specific judgment sought" (Doc. 37 at 1) and identifies no evidence suggesting that the appraisal award is what it is entitled to recover under the Replacement Cost coverage provision, the remainder of Island Roofing's motion is due to be denied.   The parties may renew their motions for summary judgment, consistent with this Order, at the close of discovery.   The Court will also entertain motions to extend the remaining pretrial

deadlines to allow reasonable time for the same.   Island Roofing's motion for a

protective order is due to be granted to the extent that the Court will prohibit

Empire from propounding discovery seeking information about the appraisal panel's

amount of loss calculations and how that panel arrived at its valuations.   Empire

may only seek discovery that supports a coverage defense, not whether the

appraisal panel incorrectly determined the value of an otherwise covered loss—such

determination is binding on Empire under the policy.

Accordingly, it is **ORDERED**:

1. Island Roofing's Motion to Confirm the Appraisal Award & Entry of
   Summary Judgment (Doc. 30) is **GRANTED IN PART** as follows.

2. The Court enters summary judgment on Counts I and II of its
   Amended Petition (Doc. 16) to the extent that: (a) the Court declares
   "the amount actually spent" to repair the property (Doc. 16-1 at 42)
   includes the amount Island Roofing spent in repairing the insured
   property; and (b) Empire may not defend against Island Roofing's
   allegations on the grounds that it believes the appraisal panel arrived
   at an incorrect value for losses that are covered under the policy.   The
   motion (Doc. 30) is **DENIED WITHOUT PREJUDICE** to the extent
   it seeks any greater or different relief than this Order grants.

3. Empire's Cross-Motion for Summary Judgment (Doc. 37) is **DENIED**
   **WITHOUT PREJUDICE** to Empire renewing its arguments in a
   subsequent motion consistent with this Order.

4.     Island Roofing's Motion for Protective Order (Doc. 31) is **GRANTED**

**IN PART** to the extent that any discovery Empire seeks must be

consistent with this Order.   The motion is **DENIED WITHOUT**

**PREJUDICE** to the extent it seeks any greater or different relief than

this Order grants.

**ORDERED** at Fort Myers, Florida, on September 19, 2022.

_____
JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE