UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ISLAND ROOFING & RESTORATION, LLC
A/A/O ENCLAVE AT NAPLES CONDOMINIUM
ASSOCIATION, INC.,

    *Plaintiff*,

v.                                                                                   No. 2:21-CV-00211-JBL-MRM

EMPIRE INDEMNITY INSURANCE COMPANY,

    *Defendant*.

_____/

**EMPIRE'S RESPONSE TO THE COURT'S NOVEMBER 9, 2023, ORDER**

Empire Indemnity Insurance Company ("Empire") responds to the Court's November 9, 2023, Order, noticing it may grant final judgment [DE 96], and states:

**I.      Summary**

Empire is entitled to summary judgment because neither the policyholder ("Enclave") nor Island Roofing actually *spent* repair costs of more than $6,065,393.55 (which derives from the total paid by Empire of $3,552,199.60 plus the policy deductible of $2,513,193.95, hereafter the "Adjusted Amount.").[1] Empire reiterates its prior position - that the policy limits Empire's repair cost payment to the amount actually spent by *Enclave*, the policyholder, who has no further

---

[1] Note that Island Roofing's response to Empire's summary judgment motion focuses on amounts Enclave paid it for repairs. [DE 85 - Island's response to Empire's summary judgment motion].

1

obligations to pay for the repairs. But even if the amount actually *spent* by Island Roofing is somehow relevant, the amount it spent for repairs was far less than the Adjusted Amount. Either way, Empire is entitled to summary judgment.

Most importantly, Island Roofing blatantly misrepresents that it "actually and necessarily spent $10,382,724.64." [DE 85, pp. 2, & 10]. Island Roofing swore that it only spent a total of $5,861,484.44 [DE 78-1 at 74:21-75:18], which includes expenditures that are not part of a repair cost, like a curious $447,312.00 payment to its appraiser [DE 85, p. 5 ¶13] a payment that was made a month after the $10.7 million appraisal award. The $10.7 million figure originates from an estimate of repair costs that Island Roofing prepared before repairs were completed and does not reflect the reality of Island Roofing's actual expenditures. *See* [DE 78-1 at 69:18-23 &73:67-74:25]. Island Roofing cannot be allowed to undermine its own deposition testimony with a contradictory declaration.

This Court should reject Island Roofing's attempt to claim almost 100% in overhead and/or profit as part of the amount it actually spent on repairs.[2] Neither overhead nor profit, under any definition, can be regarded as a repair expenditure. And Island Roofing, in deposition, could not quantify overhead. [DE 78-1 at 193:6-10]. It cannot now be allowed to provide any specific overhead amount.

---

[2] Island Roofing claims it is entitled to another $4.3 million but can only show expenditures of $5.8 million. [DE 85]. Thus, it seeks almost double the amount it has already been paid.

The bottom line is that the policy was not intended to indemnify third parties to the insurance contract. It was intended to indemnify the insured, only. If the policy limitation of "amount actually spent," as applied to Island Roofing and not Enclave, makes the AOB arrangement in this case a bad business decision, the policy cannot be reinterpreted merely to make it a viable one for Island Roofing.

## II. Empire's response to Island Roofing's responses to Empire's statement of undisputed facts and its additional facts. *See* [DE 85, pp. 4-10].[3]

The glaring problem with Island Roofing's Response to Empire's statement of undisputed facts and its additional facts and "Key Documents" sections, is that it misleads the Court into believing it made payments for repairs totaling over $10,000,000. **It most certainly did not.**

Island Roofing's Response, for the first time ever, refers, falsely, to its $10,382,724.64 Proof of Loss ("POL") as reflecting an amount "actually and necessarily spent" on repairs. [DE 85, pp. 2-3, 11, 17, & 19]. The Response also incorrectly claims the estimates attached to the POL are not estimates, but rather the full cost of repairs or "itemized charges." [DE 85, pp. 4-5, 10, & 14-15]. Before Empire's summary judgment motion, Island Roofing always called them estimates beginning with its initial Complaint [DE 1] and through the April 13, 2023, deposition of its Corporate Representative. [DE 78-1 at 37:10-13, 41:13-14, 65:21-

---

[3] Since Empire had limited pages to reply to Island's factual statements in response to Enclave's motion for summary, Empire will address them here, but stands by the facts in its motion and reply.

3

66:13, 178:25-179:25, 183:5-184:6 &194:20-195:2]. The estimates themselves, however, state they are repair estimates for a hurricane loss. [DE 85-2, p. 3]. Nothing on the estimates refers to the line items as actual charges.

The other false claim is the self-serving statement that the $10,382,724.64 figure was a "charge." **It was not.** Island charged Enclave only $6,065,393.55 for repair work and Enclave owes nothing more.[4] In fact, as can be seen, the Response often refers to the figure as something other than actual expenditures.

Eventually, Island Roofing admits in its Response that it spent $5,861,484.44 in what it calls "hard costs" for subcontractors and materials for repairs. [DE 85, p. 5 ¶12]. **This contradicts its own reliance on the $10,382,724.00 estimate as a listing of what it spent on materials and labor for the Enclave work**. The $5,861,484.44 figure is where the "amount actually spent" analysis should begin and end (in this particular discussion). The estimate of $10,382,724.64 is irrelevant and Island Roofing cannot show it or Enclave spent that amount.

But Island Roofing complains that if it recovered only these hard cost repair expenditures, it would be "unreasonable and unsupported," suggesting the job would not have been profitable. [DE 85, p. 6]. What Island Roofing really is saying is that it has the right to add overhead and profit to these hard costs so that it can make a

---

[4] **Exhibit 1**, Enclave's Corporate Representative Joan Colosimo March 23, 2023, deposition transcript at 35:6-18; s*ee also* [DE 78-1 at 143:14-147:1 & 186:1-8] Mr. Martin's deposition.

profit on the job.  However, Island Roofing during its deposition did not identify any particular amount of overhead expenditure for this project. [DE 78-1 at 89:24-90:23 & 193:6-10]. Unallocated business overhead cannot be considered a repair expenditure for a particular job.

Its Corporate Representative, Joshua Martin, admitted under oath that he did not have a specific number for overhead for the Enclave job:

```
 6  Q.· Right.· But there are also expenses that
 7     overhead related to your company that you don't have
 8     specific number for as it relates to this specific
 9     job, right?
10  A.· That's exactly true, sir.
```

[DE 78-1 at 193:6-10].  Mr. Martin clearly did not know what the overhead expenses were.  Had he provided any details, he would have been subject to cross examination on it.  He cannot now change his testimony through a declaration and claim a specific amount for overhead, assuming it qualified as a repair.  *See Van T. Junkins and Associates, Inc. v. U.S. Industries, Inc.*, 736 F.2d 656 (11th Cir. 1984) (trial court correctly disregarded affidavit that contracted deposition testimony).  Note that Mr. Martin did not reference any overhead expenses in the estimates because he knew the estimates were not a reflection of actual expenses.  Overhead was not part of the expenditures allocated to the project so it cannot be considered as part of the amount "actually spent."  Hence, the amount spent by Island Roofing did not exceed the Adjusted Amount, entitling Empire to summary judgment.

It is of no consequence that Island Roofing might not make as much as desired if only hard costs are taken into account. Empire's policy is not intended to ensure the profitability for a third party's repair job. It is a contract of indemnity for Enclave. *See Castleberry v. Goldome Credit Corp.*, 418 F.3d 1267, 1273 (11th Cir.2005) ("[A] policy of insurance, other than life or accident insurance, is basically a contract of indemnity…." (citation and internal quotation marks omitted)). The policy's payment limitation to the "amount actually spent" could not have contemplated anything but the insured's loss and indemnity.

But note that Island Roofing indeed did receive a profit on the amounts it spent on repair costs alone. From the $5,861,484.44 figure, $447,312.00 and $40,300.00 should be subtracted as these included amounts were for appraiser and umpire fees and not part of a repair work, as Island Roofing admits. [DE 78-1 at 155:6-12 & DE 85, p. 5 ¶13]. That leaves a maximum of $5,373,872.44 of possible repair-related expenditures. And even that amount includes other items not normally part of repairs, like vehicle repairs and holes from woodpeckers. [DE 78-1 at 85:17-91:22 & 103:7-104:3]. Island Roofing's claim that over $10.3 million in repair costs is reasonable, assumes a nearly 100 percent overhead and profit markup on the roughly $5 million in maximum *bona fide* "hard costs" it actually spent on the project. By any measure, that is grossly excessive and certainly more than the 10 percent

overhead and 10 percent profit shown on the estimate that Island Roofing enthusiastically references.

Discovery was performed on the specific issue of "amount actually spent" and Island Roofing admits it produced a spreadsheet of its actual (not estimated) allocated expenditures totaling a gross amount of $5.3 million.[5] It admits in the Response that these expenditures were the hard costs on the project. Island Roofing cannot contradict its own deposition testimony and its admission in its own response with a declaration that relies on another document and amount for the Enclave repair project expenditures. *See Van T. Junkins*, 736 F.2d 656 (11th Cir. 1984) (trial court correctly disregarded affidavit that contracted deposition testimony).

Second, Island Roofing denied it received more money than it spent making repairs [DE 85, p. 7]. However, the record shows otherwise. Empire adjusted the claim for $6,065,393.55. Island Roofing can only show allocated costs of $5,861,484.44, which admittedly includes costs not covered under the policy and that Island Roofing states it is not seeking to recover, like its fees to an appraiser for $447,312.00 and umpire for $40,3000.00. [DE 85, pp. 3-4]. Because Island Roofing cannot prove show it or Enclave spent more than the amount Empire adjusted the claim for $6,065,393.55, nothing further is owed.

---

[5] Island Roofing produced an excel spreadsheet titled "Transaction Detail by Account" that lists allocated costs of $5,861,484.44. [DE 82-1]. That amount includes uncovered costs like $447,312.00 in appraiser fees and $40,300.00 in umpire fees.

Empire's responses to Island Roofing's statement of additional undisputed facts [DE 85, pp. 7-10] are:

1.   Admitted.

2.   Denied as phrased.  In July 2018, Island Roofing created a bid for $6,853,187.60 that mainly involved replacing Enclave's roofs, which was incorporated into an Agreement signed by Island Roofing and Enclave on November 23, 2018.  In the Agreement, Enclave assigned its rights under the policy and agreed to pay $2.5 million (roughly equal to the policy deductible) to replace the roofs with nothing more being owed.  [DE 78-1 at 186:1-8].  The policy was never intended to apply to an assignee in light of the policy's anti-assignment provision:

> **F. Transfer Of Your Rights And Duties Under This Policy**
> Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

3.   Denied that Enclave consists of 49 buildings.  Enclave consists of only 19 buildings, 1 clubhouse, 6 carports, 12 garages, and 1 maintenance room.  [DE 16-1, Ex. A at SUM 01-05 – Policy].

4.   Denied that estimates typically include 40%-50% gross profit.[6]  This statement contradicts the record that shows Island Roofing's March 2019, estimate

---

[6] Island Roofing seems to claim it is entitled to nearly 100% gross proof (including overhead and profit) since it claims it is entitled to an additional $4,315,899.29, which is almost double the amount listed in the excel spreadsheet showing its expenditures. [DE 82-1]. Coincidently, Island first made this claim about a week before its corporate representative's deposition when it was

and the appraisal award add no more than 20% for overhead and profit, combined. Also, Island Roofing admitted it does not know the amount of its overhead:

> 6 Q.· Right.· But there are also expenses that
> 7 overhead related to your company that you don't have
> 8 specific number for as it relates to this specific
> 9 job, right?
> 10 A.· That's exactly true, sir.

[DE 78-1 at 193:6-10].

    5.    Denied that all repairs were necessary and covered under the policy and that the appraisal award accurately reflects those repairs. This statement contradicts the record – the Award Form states items and costs were included that may not be covered under the policy.[7] Also, the award is irrelevant because repairs were completed and Island Roofing no longer seeks that amount since it admits it spent less making repairs. [DE 85, pp. 2, 14-15 & 18-19].

    6.    Denied that Island Roofing obtained Empire's written consent to assign the policy.

    7.    Denied that Island Roofing showed it is entitled to $10.3 million, the amount of its March 2019, POL and estimates. This allegation mischaracterizes the POL and estimates and presents new theories that are not supported by any legitimate

---

unable to produce reliable documents, like invoices and receipts, proving it spent $10.7 million (the appraisal award) making repairs. Instead, it could only show expenditures of $5,861,484.55.
[7] *See* [DE 30-2 at 722] Appraisal Form attached to Norine Weber's declaration attached to Island Roofing's Motion to Confirm Appraisal Award; *see also* [DE 16-3] Amended Petition for Declaratory Judgment & Complaint.

evidentiary citation and are only supported by self-serving statements from Island Roofing. In its Response, for the first time, Island Roofing argues, frivolously, that the estimate supporting its POL are not estimates, but rather "itemized charges" showing the amount it charged for repairs and services. [DE 85, p. 4]. Importantly, before summary judgment, Island Roofing always referred to them as estimates. [DE 16, pp. 6-7]. The estimates were drafted in March 2019, at least six months before repairs were completed and therefore cannot show actual expenses since the amount was not yet known. [DE 78-1 at 69:18-21].

8. *See Supra* 3.

9. Denied as phrased. All repairs have been completed, but not all are covered under the policy. The appraisal award is irrelevant since repairs have been completed and Island Roofing no longer seeks that amount. [DE 85, pp. 10 & 18-19]. Since repairs were completed the policy's Replacement Cost provision applies.

10. Denied that Island Roofing showed it actually and necessarily spent $10,382,724.64 making repairs and it is owed $4,315,899.29. These amounts contradict the record, which shows that every possible cost allocated to making repairs totals only $5,861,484.55, which is about 100% less than its repair estimates. The allocated costs include costs not covered under the policy.

### III. Argument

    **A.**    **Island Roofing cannot recover because the policy limitation of "the amount actually spent" refers to the amount the insured "spent"**

**and the insured did not spend more than what Empire paid minus the deductible, therefore, nothing is owed.**

The policy's Replacement Cost provision dictates the payment amount since all repairs have been completed. That provision provides that the insured can recover the least of three options. Here that is the amount the insured "actually spent that is necessary to repair or replace the loss or damage":

> 3. **Replacement Cost**
>
>    a. Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Loss Condition, Valuation, of this Coverage Form.
>
>    \*\*\*\*
>
>    e. We will not pay more for loss or damage on a replacement cost basis than the least of (1), (2) or (3), subject to f. below:
>       (1) The Limit of Insurance applicable to the lost or damaged property;
>       (2) The cost to replace the lost or damaged property with other property:
>           (a) Of comparable material and quality; and
>           (b) Used for the same purpose; or
>       (3) The amount actually spent that is necessary to repair or replace the lost or damaged property.

Florida recognizes that policy payment limitation provision. *See Slayton v. Universal Prop. & Cas. Ins. Co.*, 103 So. 3d 934 (Fla. 5th DCA 2012) (affirming directed verdict relying on a nearly identical policy payment limitation provision); *see also Ford v. American Security Ins. Co.,* No. 1:19-cv-20223-JLK, 2019 WL

11

6609239, at *3 (S.D. Fla. Dec. 5, 2019) (reducing appraisal award by subtracting prior payments and on basis of evidence showing actual expenses, granting summary judgment to insurer and denying insured's motion to confirm appraisal award).

It is undisputed that Enclave signed a repair contract with Island Roofing for $2,500,000.00, after Island Roofing received $3,550,749.60 in total payments by Empire towards repairs. [DE 78-1 at 145:23-146:6 & 190:23-191:9]. Island Roofing effectively credited the Empire payments with the Enclave out of pocket payment and Enclave owed nothing more. The repairs were done, therefore, for just a little less than Empire's Adjusted Amount of $6,065,393.55. Empire owes nothing more.

Enclave's indemnity right and only Enclave's indemnity right, as defined and limited by the policy, was transferred by assignment to Island Roofing. Specifically, Enclave's indemnity right was to be reimbursed for what Enclave spent on repairs.[8] Enclave's indemnity right did not morph into Island Roofing's own indemnity right upon assignment. As assignee, Island Roofing stands in Enclave's shoes. *See United Water Restor. Grp., Inc. v. State Farm Fla. Ins. Co.*, 173 So. 3d 1025, 1027 (Fla. 1st DCA 2015). An assignment transfers to the assignee all the interest *of the assignor* under the assigned contract. *Livingston v. State Farm Mut. Auto Ins. Co.*, 774 So. 2d 716 (Fla. 2d DCA 2000). It does not change any terms and conditions applicable

---

[8] Empire's payments on Enclave's behalf, received by Island Roofing toward repairs, effectively could be included as part of what Enclave actually spent. But the deductible still must be applied.

to an assignor like Enclave. *See, e.g., Citizens Property Ins. Corp. v. Ifergane*, 114 So. 3d 190 (Fla. 3d DCA 2012). (assignment does not transfer an insured's policy obligations). If Enclave had not assigned its rights under the policy, there would be no question that Enclave would be entitled only to the amount it spent.

The policy terms did not contemplate reimbursing an assignee like Island Roofing for its own expenditures. It only contemplated reimbursing an insured like Enclave for reasonable repair payments it actually spent for repairs. In fact, the policy bars assignments per the following provision and therefore was never intended to indemnify assignees:

> **F. Transfer Of Your Rights And Duties Under This Policy**
> Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

Fundamentally, it is the individual/entity insured under the policy that should be indemnified, not a vendor or contractor, which is owed nothing more than insured.

### B. Island Roofing cannot show it spent more than what was paid by Empire plus the deductible.

Island Roofing cannot show it spent more than what Empire paid plus the deductible. In deposition, Island Roofing could not provide any amount it actually spent above and beyond $5,861,484.55, the amount it claims it cost making repairs. [DE 87-1 at 74:21-75:18]. Island Roofing is held to that amount. That amount admittedly includes costs not covered under the policy, like a $447,312.00 appraiser

and $40,300.00 umpire fee. *See 316, Inc. v. Maryland Cas. Co.*, 625 F.Supp. 2d 1187, 1196 (N.D. Fla. 2008) (insured not entitled to reimbursement for fees it paid to umpire and its appraiser). Island Roofing admits it is not entitled to recover these fees. Deducting these uncovered costs leaves $5,373,872.55, subtracting the policy's $2,513,193.95 deductible leaves $2,860,678.60. Empire paid more than that. Empire paid $3,552,199.60, or in other words – Empire overpaid by $691,521.00.

Island Roofing is not entitled to overhead or profit ("O&P") since neither is an amount actually spent on repairs. Profit is an amount earned, not spent. Importantly, an insured is not entitled to profit from an insurance policy. Overhead is the general expense of the business, like rent and utilities, and not a repair expenditure.[9] Nonetheless, Island Roofing claims it is entitled to almost 100% overhead and profit or in other words another $4.3 million. Mr. Martin admitted he cannot allocate overhead, and Island Roofing's overhead did not change because of this project. [DE 78-1 at 193:6-10]. There is no competent evidence to support a claim for almost 100% overhead and profit. Besides, the record contradicts such an inflated amount. First, Island Roofing and Enclave's contract lists an unallocated O&P of 20%. [DE 85-1, p. 6]. The contract reads:

---

[9] *See* merriam-webster.com/dictionary/overhead, which defines overhead as business expenses (such as rent, insurance, or heating) not chargeable to a particular part of the work or product.

> 2. <u>Changes in Scope of Work – Association requested</u>: Any change in the Scope of Work concerning property damage not covered by the Association's insurance policy and specifically requested by Association or required by Association plan reviewers, involving extra work and/or costs ("Additional Work") will only be performed with an Association approved change order, and this work done by change order will be charged on a time and material basis, plus 20% for Contractor's profit and overhead expenses. The cost of the Additional Work will be invoiced separately by the Contractor and will be paid by Association within sixty (60) days of receipt.

Second, Island Roofing's estimate lists O&P at less than 20%, combined, about 10% for each. [DE 85-2]. Finally, the appraisal award calculates O&P at only 20%. [DE 85-3, pp. 105-128]. Therefore, Island Roofing's inflated and unallocated O&P "range" cannot be an expenditure. The fact that it is a "range" belies any argument that it is a true expenditure or charge. Island Roofing has not shown it is entitled to O&P; it has not cited any case for such an exorbitant amount, and it has not pointed to any provision in the policy allowing recovery of O&P.

As previously discussed, the $10.3 million estimate, in light of the documentation by Island Roofing of hard cost expenditures, is completely irrelevant. Even if the estimate had been *Empire's* estimate, only the amount actually spent would be considered. *See State Farm Fire and Cas. v. Patrick,* 647 So. 2d 983, 984(Fla. 3d 1994) (held insured only entitled to amount spent even when insurer estimates it will cost more to repair the damage); *Harrington v Amica Mut. Ins. Co.*, No. 0796, 223 A.D.2d 222, 645 N.Y.S.2d 221, 1996 WL 390931 (N.Y.A.D. 4 Dept., July 12, 1996 (court observed that insured could only recover amount spent and not insurer's replacement cost estimate).

Wherefore, Empire requests entry of final judgment in its favor stating

nothing further is owed and any other relief this Court deems just and appropriate.

BUTLER WEIHMULLER KATZ CRAIG LLP

*s/ Kathleen P. Phillips*
J. PABLO CÁCERES
Florida Bar No.: 131229
pcaceres@butler.legal
KATHLEEN P. PHILLIPS
Florida Bar No.: 168149
kphillips@butler.legal
Secondary:   marthur@butler.legal
                       ecooley@butler.legal
400 N. Ashley Drive, Suite 2300
Tampa, Florida 33602
Telephone:  (813) 281-1900
Facsimile:   (813) 281-0900
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I certify that a copy hereof has been furnished to:

Anthony J. Tinelli
Gabriel Fernandez
Tinelli Fernandez, PLLC
2600 S. Douglas Road, Suite 302
Coral Gables, Florida 33134-6125
Tinelli@Tinellilaw.com
Fernandez@Tinellilaw.com
*Attorneys for Plaintiff*

By cm/ecf system on November 20, 2023.

*s/ Kathleen P. Phillips*
KATHLEEN P. PHILLIPS
